IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAN J. BENSON,

                    Plaintiff,

    v.                                               1:13-cv-595-WSD

OFFICER ANDRES FACEMYER,

                    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Andres Facemyer's

("Defendant") Motion for Summary Judgment [17] ("Motion") and Plaintiff

Dan J. Benson's ("Plaintiff," and, together with Defendant, the "Parties") Motion

for Summary Judgment [19] ("Cross Motion").

I.    BACKGROUND

    A.    Introduction

    On February 22, 2011, Plaintiff, a sixty-five-year-old man, was walking in

Chastain Park (the "Park") in Atlanta.[1]  (Pl. Statement of Material Facts [19-1]

("SOMF") at ¶¶ 1-3).  Plaintiff had at least one encounter with Amy Wood

---

[1] Both Parties assert that the incident occurred on February 22, 2011.  The Witness Statement [17-1] completed by Amy Wood is dated February 21, 2011.  While not material to the Court's consideration of the motions for summary judgment, the Court assumes that the Witness Statement was incorrectly dated and that the Plaintiff and Defendant correctly recall the date of the incident.

("Wood"),[2] who was walking in the Park with her two-and-a-half-year-old daughter ("Daughter"),[3] during which Plaintiff made some comment on Daughter's dress.  (Id. at ¶ 6-7; Def. Statement of Material Facts [17-2] ("SOMF") at ¶ 6).[4] Plaintiff also asked or commented to Daughter about her panties.  (Pl. SOMF at ¶ 17; Def. SOMF at ¶ 7).  Exactly what was said, and what prompted it, is disputed.

After the encounter with Plaintiff, Wood called the Atlanta Police Department to report Plaintiff's conduct.  (Pl. SOMF at ¶ 20; Def. SOMF at ¶ 5). Defendant, a City of Atlanta police officer, responded and arrested Plaintiff, charging him with child molestation and possession of a firearm during the commission of a felony.[5]  (Pl. SOMF at ¶¶ 24, 31-32; Def. SOMF at ¶¶ 2, 9).

On March 9, 2011, a Preliminary Hearing was held by Judge Karen Woodson of the Superior Court of Fulton County.  Defendant was the only witness

---

[2] Defendant refers to Ms. Wood as Ms. Woods in his Statement of Material Facts. According to the Witness Statement, her last name is spelled "Wood."

[3] Daughter's name is not provided in any of the pleadings due to her age.

[4] Defendant, in his Statement of Material Facts, only references one encounter between Plaintiff, Wood, and Daughter.  Defendant references an earlier encounter at the Park between the three in his briefings and at the Preliminary Hearing held on March 9, 2011.

[5] It is undisputed that Plaintiff had a valid permit to carry a firearm.

called to testify on behalf of the state at the Preliminary Hearing.[6]  After

considering the testimony presented, the Superior Court concluded that no

probable cause existed for the arrest, dismissed the charges and ordered Plaintiff to

be released from detention.  (Am. Com. at ¶¶ 33-34; Transcript of Preliminary

Hearing [18-2] ("Trans.") at p. 36).

A grand jury subsequently indicted Plaintiff on the same child molestation

and possession of a firearm charges on which he initially was arrested.  The

prosecutor offered to dismiss the charges and make them eligible to be expunged if

Plaintiff agreed to participate in a pretrial diversion program.  Plaintiff agreed to

the program, successfully completed it, and the charges returned against him were

dismissed.  (Am. Com. at ¶¶ 33-34).

On April 22, 2013, Plaintiff filed his Amended Complaint [4] against

Defendant.[7]  Plaintiff asserts a Fourth Amendment claim under 42 U.S.C. § 1983,

arguing that Defendant violated Plaintiff's Fourth Amendment right to be free from

"unreasonable searches and seizures" by arresting Plaintiff without probable cause.

Plaintiff is suing Defendant in his individual capacity.

---

[6] Ms. Brandy Huff, a private investigator hired by Plaintiff to inventory the possessions and photographs in his home, testified on Plaintiff's behalf.

[7] On February 22, 2013, Plaintiff filed his initial complaint [1], alleging claims against both the City of Atlanta and Defendant.  The Amended Complaint raises a claim against only Defendant, and provides greater detail of the events at the Park. Plaintiff voluntarily dismissed the City on April 30, 2013 [6].

On January 8, 2014, Defendant filed his Motion seeking summary judgment on the grounds that he has qualified immunity from the claims asserted in the Amended Complaint.  On January 31, 2014, Plaintiff filed his Response in Opposition [18] to the Motion, and filed his Cross Motion[8] seeking summary judgment that Defendant violated Plaintiff's Fourth Amendment right and thus is liable under § 1983.[9]  The issue raised by the Parties in their respective motions center on whether Defendant had arguable probable cause to arrest Plaintiff.

B.    Plaintiff's Version of Events

Plaintiff asserts that on February 22, 2011, he was walking in the Park for exercise.  (Pl. SOMF at ¶¶ 2-3).  After his walk was done, Plaintiff rested on an empty set of swings.  (Id. at ¶ 5).  No one else was on the swings or in the vicinity of them when Plaintiff arrived.  (Id.).  After resting on the swings for a while, Plaintiff began walking back to his vehicle, and when doing so he encountered

---

[8] On February 10, 2014, Defendant filed his Reply [20] in support of his Motion and his Response to Statement of Material Facts [21] regarding Plaintiff's Cross Motion.  On February 20, 2014, Defendant filed his Response in Opposition [22] to Plaintiff's Cross Motion.  Plaintiff's Cross Motion simply incorporates the arguments raised in his Response in Opposition, and he filed his separate required statement of material facts to support his Cross Motion.  Defendant's Reply in support of his Motion and his Response in Opposition to Plaintiff's Cross Motion, while filed on different days and docketed separately, are identical

[9] Plaintiff appears only to seek summary judgment on the issue of Defendants liability under § 1983.  Plaintiff does not seek summary judgment regarding damages.

Wood and Daughter.  (Id. at ¶ 6).  Plaintiff asserts that he did not recognize Wood or Daughter from any previous encounter.  (Id. at ¶ 7).

Plaintiff asserts he waved hello to Wood and Daughter and that Wood responded by waving back, but Daughter did not.  (Id. at ¶ 8-9).  Wood then turned towards Plaintiff and told Daughter to "waive [sic] hello to the nice man."  (Id. at ¶ 9).  Plaintiff, a few feet away from Wood and Daughter, turned towards Wood and Daughter, and he and Daughter waved to each other.  (Id. at ¶ 10).  Plaintiff then said that Daughter was wearing a very beautiful pink dress.  (Id. at ¶ 11).  Plaintiff asserts that Daughter pinched the top of her dress, raised it slightly, showing her pink underwear, and exclaimed "panties."  (Id. at ¶ 12).

Plaintiff claims the incident reminded him of his own daughter's outfits when she was a child, and how she often became excited about wearing matching outfits and underwear.  (Id. at ¶ 16).  Plaintiff asserts that he recalls saying something like "my daughter had panties just like yours" or "my daughter used to wear matching panties."  (Id. at ¶ 17).  Plaintiff turned and continued on his walk in the opposite direction of Wood and Daughter.  (Id. at ¶ 19).  He did not follow them while he was in the Park.  (Id.).

After this encounter, Wood borrowed a cell phone from a person she passed by the name of Royce Horne ("Horne").  (Pl. SOMF at ¶ 20; Trans. at p. 9).  Wood

5

used the phone to call the Atlanta Police Department.  (Pl. SOMF at ¶ 20; Trans. at

p. 9).  Wood reported that a man in the Park had asked Daughter about the color of

her panties.  (Pl. SOMF at ¶ 23; Trans. at p. 4).  The Atlanta Police Department

dispatched Defendant to investigate.  (Pl. SOMF at ¶ 24; Trans. at p. 4).

      At the Park, Defendant spoke with Horne, who identified Plaintiff as the

person Wood referred to in her call to the Atlanta Police Department.  (Pl. SOMF

at ¶ 25).[10]  Defendant drove towards Plaintiff and, getting out of his patrol car,

ordered Plaintiff to stop.  (Id. at ¶ 26).  Plaintiff stopped and turned to ask

Defendant if he was speaking to him.  (Id. at ¶ 27).  Defendant confirmed he was

speaking to Plaintiff, and Plaintiff crossed the street to speak with Defendant.  (Id.

at ¶¶ 27-28).

      Defendant asked Plaintiff if he was carrying a weapon.  (Id. at ¶ 29).

Plaintiff responded that he was carrying a pistol for which he had a permit.  (Id.).

Defendant ordered Plaintiff to keep his hand away from his front pant pocket and

instructed him to walk with him.  (Id. at ¶ 30).  Plaintiff was told by Defendant that

he was being detained and Plaintiff claims Defendant said if Plaintiff tried to leave

he would be tackled and injured.  (Id.).  Defendant placed Plaintiff in handcuffs,

and removed Plaintiff's firearm and other personal effects from him.  (Id. at ¶ 31).

---

[10] Defendant acknowledges that Horne did not witness the encounter between
Plaintiff and Wood or Daughter.  (Trans. at p. 9).

Defendant asked Plaintiff what he said to Daughter.  (Id. at ¶ 35).  Plaintiff asked to whom Defendant was referring and Defendant responded "the little girl in the pink dress."  (Id.).  Plaintiff then recounted his conversation with Wood.  (Id. at ¶ 37).

Defendant left and was gone for approximately an hour while he interviewed Wood.  (Id. at ¶¶ 39-40).  Wood told Defendant she encountered Plaintiff twice while she was in the Park.  (Pl. SOMF at ¶ 42; Trans. at p. 5, 10).  The first time Plaintiff said "hello" and she did not respond.  (Pl. SOMF at ¶ 42; Trans. at p. 10-11).  Wood said the first encounter made her nervous.  (Pl. SOMF at ¶ 42; Trans. at p. 10).  Wood claims she next encountered Plaintiff at a swing set in the Park.  (Pl. SOMF at ¶ 42; Trans. at p. 11).  When Wood arrived at the swings, Plaintiff's back was towards her.  (Pl. SOMF at ¶ 42; see also Witness Statement [19-1] at p. 1).  Plaintiff turned and said hello to Wood, and complimented Daughter on wearing a pretty dress.  (Pl. SOMF at ¶ 42; Trans. at p. 13).  Wood reported that Plaintiff then asked Daughter whether she was wearing panties to match her dress, at which point Daughter lifted her dress, said "pink," and pointed at her underwear.  (Pl. SOMF at ¶ 42; Trans. at p. 13-14).  Wood stated that Plaintiff continued walking and did not interact with Wood or Daughter again.  (Pl. SOMF at ¶ 42).

C.    Defendant's Version of Events

Defendant claims that, on February 22, 2011, he was told that a man, later identified as Plaintiff, while at the Park had asked a two-and-a-half-year-old girl about the color of her panties.  (Def. SOMF at ¶ 2).  When he arrived at the Park to investigate, Horne identified Plaintiff to Defendant.  (Id. at ¶ 3).  Defendant made contact with Plaintiff and asked him if he had any weapons.  (Id. at ¶4).  Plaintiff stated that he had a gun in his pocket.  (Id.).

Defendant detained Plaintiff, secured his weapon, and made contact with Wood.  (Def. SOMF at ¶ 5; Trans. at p. 3).  The record is not clear whether Defendant placed Plaintiff in handcuffs at this point.  (Def. Res. to Pl. SOMF [21] at ¶ 31).[11]  Defendant stated that Plaintiff remained in the custody of other officers while Defendant questioned Wood.  (Id. at ¶ 58).  Defendant claims Wood identified Plaintiff as the person she encountered while she and Daughter were at the swings.  (Def. SOMF at ¶ 6).  Defendant is unsure whether Plaintiff was

---

[11] Defendant, in response to Plaintiff's statement that Defendant "placed [Plaintiff] in handcuffs, and removed his firearm and [other] personal effects," responded, in part, that "[It] is *controverted* that [Defendant] placed Plaintiff in handcuffs for his own safety after ascertaining that Plaintiff was the suspect and removed the loaded weapon from Plaintiff's person."  (Def. Res. to Pl. SOMF at ¶ 31) (emphasis added).  This statement is unclear, as it is undisputed that Defendant removed Plaintiff's firearm.  (Trans. at p. 6). The Court cannot determine whether it is only controverted that Defendant placed Plaintiff in handcuffs at this point, or if Defendant meant to write that it was "uncontroverted" where he wrote "controverted."

already at the swings when Wood arrived, or if he went to the swings after they arrived.  (See Trans. at pp. 11-12).  Wood told Defendant she and Daughter were approached by Plaintiff, who told Daughter that her dress was pretty.  (Def. SOMF at ¶ 6).  Wood said Daughter responded by stating that her dress was pink.  (Id. at ¶ 6).  Plaintiff then asked Daughter if her panties were pretty and if they matched her dress, and Daughter pulled up her dress, touched her panties, and stated "pretty panties."  (Id. at ¶ 7).

Defendant said he discussed Wood's account with Plaintiff, who claimed he told Daughter that her dress was pretty and Daughter responded by saying the dress was pink.  (Id. at ¶ 8).  Defendant said that when Daughter pulled her dress up, Plaintiff admitted he commented that she was wearing pretty pink panties.  (Id.).  Defendant cannot recall being told how far Daughter pulled up her dress.  (Trans. at p. 14).

Based upon Wood's testimony and Plaintiff's admission that he commented on Daughter's underwear, Defendant believed that probable cause existed to arrest Plaintiff for child molestation and possession of a firearm during the commission of a felony.  (Def. SOMF at ¶ 9).

D.   <u>Preliminary Hearing</u>

At the Preliminary Hearing on Plaintiff's child molestation and firearm charges, Judge Woodson found that probable cause did not exist authorizing Plaintiff's arrest.  (Trans. at p 36).  At the hearing, Defendant acknowledged that Wood did not accuse Plaintiff of attempting to touch Daughter, exposing himself to Wood or Daughter, or of doing anything else of a sexual nature during the encounter.  (<u>Id.</u> at pp.14-15)

Defendant said his basis for his arrest was Plaintiff's comment on the color of Daughter's panties.  (<u>Id.</u> at pp. 18-22).  Defendant acknowledged that Plaintiff did not urge Wood or Daughter to go with him to any place away from the Park.  (<u>Id.</u> at 17).  Prior to interviewing Plaintiff, Defendant determined that Plaintiff did not have a prior arrest record or any outstanding warrants.  (<u>Id.</u> at pp. 17-18).

Defendant stated during the hearing that his search of Plaintiff's person and an inventory of Plaintiff's vehicle did not reveal any evidence to suggest that Plaintiff was seeking to molest a child.  (<u>Id.</u> at pp. 15-17).  Defendant acknowledged that Plaintiff had a permit to carry his pistol, and that Wood was unaware that Plaintiff was armed.  (<u>Id.</u> at p. 16).

Defendant stated that he understood that sexual gratification is an element of the crime of child molestation, but that he did not ask Wood why she thought

Plaintiff's comment to Daughter was for the purpose of sexual gratification.  (Id. at p. 18).  Defendant stated that Plaintiff's second attempt to make contact with Wood and Daughter at the swings and his comment on Daughter's underwear in his mind constituted evidence that Plaintiff was seeking sexual gratification.  (Id. at pp. 18-22).  Defendant asserted that Plaintiff's sole purpose of making contact was to speak with Daughter about her underwear, and that this is deviant behavior.  (Id. at p. 19).  Defendant stated that the only reason a 65-year-old man would speak to a 2-year-old girl about her underwear is because he is interested in hearing about her underwear, thus gratifying his sexual needs.  (Id. at pp. 18-22).

## II.    DISCUSSION

### A.    Standard of Review

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Cross-motions for summary judgment do not preclude the Court from finding material facts in dispute." Grovner v. United States, CV292-57, 1993 WL 144692 (S.D. Ga. Mar. 15, 1993).  Parties here have filed motions for summary judgment and the Court views the facts in the light most favorable to the party opposing the other party's motion.  See, e.g., Hallum v. Provident Life & Acc. Ins. Co., 257 F. Supp. 2d 1373, 1375 (N.D. Ga. 2001).

   B.   Analysis

Under the Fourth Amendment, an arrest is a "seizure" of a person, and whether an arrest is reasonable depends on whether there is probable cause for the arrest.  California v. Hodari D., 499 U.S. 621, 624 (1991); United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (per curium).  "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  Floyd, 281 F.3d at 1348.  The probable cause standard is practical and non-technical, and is applied in a specific factual context considering the totality of the circumstances.  Skop v. City of Atlanta, Georgia, 485 F.3d 1130, 1137 (11th Cir. 2007) (citing Maryland v. Pringle, 540 U.S. 366, 370 (2003)).

If a law enforcement officer makes an arrest without probable cause, he may still retain the defense of qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (citations and quotations omitted).  To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred.  Crosby v. Monroe, 394 F.3d 1328, 1332 (11th Cir. 2004).   Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.  Id. In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was "clearly established" at the time he did it.  Id.

The Parties do not dispute that Defendant was performing a "discretionary function" when he arrested Plaintiff on February 22, 2011.  See id.  The Court notes also that the Fourth Amendment's requirement that a warrantless arrest must

be made with probable cause is clearly established.[12]  Kingsland v. City of Miami,

382 F.3d 1220, 1226 (11th Cir. 2004); Marx v. Gumbinner, 905 F.2d 1503, 1505

(11th Cir. 1990).  The Parties' dispute centers on whether Defendant committed a

constitutional violation when he arrested Plaintiff.

 The standard to determine if an arrest constitutionally violates a person's

rights sufficient to support a claim under § 1983 is whether there was "arguable

probable cause" to make the arrest.[13]  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th

Cir. 2002).   Arguable probable cause is evaluated by determining whether

"reasonable officers in the same circumstances and possessing the same knowledge

as the Defendant could have believed that probable cause existed to arrest."  Id.

"What counts for qualified immunity purposes relating to probable cause to arrest

is the information known to the defendant officers or officials at the time of their

---

[12] Defendant asserts that Plaintiff failed to establish that Defendant violated clearly
established law because Plaintiff did not cite to any authority that arresting
Plaintiff based upon Plaintiff's alleged conduct on February 22, 2011, would
clearly be unconstitutional.  (Def. Res. to Mot. at p. 4-5).  In essence, Defendant
asserts that Plaintiff must find authority showing that an arrest on child molestation
charges is unconstitutional in a situation factually similar to the one at issue here.
Defendant is mistaken.  The law provides that individuals have a constitutional
right to freedom from arrest in the absence of probable cause.  The only question
before the Court is whether Plaintiff's right was violated by Defendant.

[13] At the Preliminary Hearing, Judge Woodson concluded that Defendant did not
have probable cause to arrest Plaintiff.  (Trans. at p. 36).  The standard to
determine if Defendant is entitled to qualified immunity from the claim is the
lower arguable probable cause standard.

conduct, not the facts known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999); see also Brienza v. Gee, 307 F. App'x 352, 354 (11th Cir. 2009); Skop, 485 F.3d at 1143.

Whether an arresting official has arguable probable cause depends on the elements of the alleged crime.  Crosby, 394 F.3d at 1333.  Here, Defendant arrested Plaintiff for child molestation under O.C.G.A. § 16-6-4, which states: "A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . ."  O.C.G.A. § 16-6-4(a)(1).[14]

The "immoral or indecent" acts proscribed by O.C.G.A. § 16-6-4 are those that "offend against the public's sense of propriety" as well as "acts more suggestive of sexually oriented misconduct to a child's body than simply assaultive in nature."  Chapman v. State, 318 S.E.2d 213, 214 (Ga. App. Ct. 1984).  "The focus is on the adult's action toward the child in relation to the motive for the action[.]"  Stroeining v. State, 412, 486 S.E.2d 670, 671 (Ga. App. Ct. 1997).  An

---

[14] Defendant's arrest for possession of a firearm during the commission of a felony under O.C.G.A. § 16-11-106 is premised on the actual commission of the felony at issue -- child molestation -- and the validity of this arrest must stand or fall in conjunction with the underlying felony upon with the arrest was based.  Cf. State v. Ray, 510 S.E.2d 361, 361 (Ga. App. Ct. 1998).

"act generally viewed as morally and sexually indelicate, improper and offensive" can constitute child molestation.  <u>Chapman</u>, 318 S.E.2d at 215.  There is no requirement that the act must involve physical contact with the child.  "A child's mind may be victimized by molestation as well."  <u>Smith v. State</u>, 342 S.E.2d 769, 771 (Ga. App. Ct. 1986).

Plaintiff has the burden of demonstrating that Defendant is not entitled to immunity.  <u>See</u> <u>Crosby</u>, 394 F.3d at 1332.  In determining if Defendant is entitled to qualified immunity on competing motions for summary judgment, the Court is required to view the evidence in the light most favorable to each movant -- with regard to their respective motion for summary judgment -- and to draw all inferences in their favor, to the extent support by the record.  <u>See</u> <u>Garczynski</u>, 573 F.3d at 1165.  Disputes of critical facts here preclude the grant of summary judgment to either party.  The dispute centers on at least two principal issues.  First, when exactly did Defendant arrest Plaintiff.  Second, whether Defendant was told by Wood that Plaintiff asked Daughter about her underwear, motivating her to show them to Plaintiff.

       1.    <u>Time of Arrest</u>

Plaintiff claims he was told during his initial encounter with Defendant that Plaintiff was being detained, that if he tried to flee he would be tackled and injured,

and that Plaintiff then was handcuffed by Defendant.  (Pl. SOMF at ¶¶ 29-32).

Plaintiff claims further that his restraint occurred before Defendant asked him

about the incident with Wood and Daughter, and before Defendant interviewed

Wood.  (Pl. SOMF at ¶¶ 35, 40; Pl. Res. at p. 20).  Defendant denies that he

threatened to harm Plaintiff if he fled, and appears to deny that he handcuffed

Plaintiff during their initial encounter.  (Def. Res. to Pl. SOMF at ¶¶ 30-32).

Defendant admits that Plaintiff was in the custody of two other police officers

while Defendant spoke with Wood.  (Def. Res. to Pl. SOMF at ¶ 58).

      "A 'seizure' under the Fourth Amendment occurs 'when the officer, by

means of physical force or show of authority, terminates or restrains [a person's]

freedom of movement, through means intentionally applied.'"  Chandler v. Sec'y

of Florida Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012) (citing Brendlin

v. California, 551 U.S. 249, 254 (2007)); see also Proescher v. Bell, 966 F. Supp.

2d 1350, 1363 (N.D. Ga. 2013).  A threat to injure Plaintiff if he fled, and

handcuffing of Plaintiff, if true, can constitute a seizure of Plaintiff for Fourth

Amendment purposes.  See Chandler 695 F.3d at 1199.  Plaintiff claims that he

was "arrested" before he or Wood were questioned.  (See Am. Com. at ¶¶ 22-23).

      A "seizure," however, is not necessarily an "arrest."  "[L]aw enforcement

officers may seize a suspect for a brief, investigatory . . . stop where (1) the

officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011) (citing Terry v. Ohio, 392 U.S. 1, 19-20 (1968)).

An "investigatory stop is not an arrest despite the fact that a reasonable person would not believe he was free to leave." United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995). "No brightline test separates an investigatory stop from an arrest. Instead, whether a seizure has become too intrusive to be an investigatory stop and must be considered an arrest depends on the degree of intrusion, considering all the circumstances." Id. "[T]he fact that police handcuff the person or draw their weapons does not, as a matter of course, transform an investigatory stop into an arrest." Id.; see also United States v. Gil, 204 F.3d 1347, 1350 (11th Cir. 2000) (detainment of handcuffed defendant in back of police car for 75 minutes a Terry stop and not an arrest).

There is here a question of fact concerning whether Plaintiff's freedom of movement was terminated by Defendant's threats and physical restraint -- and whether this was sufficiently intrusive to be considered more than merely an investigatory stop. When the arrest occurred depends on the credibility of

Plaintiff's and Defendant's -- and perhaps others -- account of the events on

February 22, 2011.  When Plaintiff was arrested is thus important in determining

whether Defendant had arguable probable cause to arrest Plaintiff when the arrest

occurred.  This is an issue that is required to be resolved at trial.

                    2.    Facts Known to Defendant

        Once the time of arrest is determined, a jury then will have to determine

what was known to Defendant to decide whether he had arguable probable cause to

arrest.  Plaintiff asserts he was "arrested" immediately after Defendant made

contact with him.  If this is true, Defendant, at the time of arrest, only knew: 1) an

unidentified man had asked a two-and-a-half-year-old girl about the color of her

panties; and 2) that Horne, who did not witness Plaintiff's encounter with Wood

and Daughter, identified Plaintiff as the subject of the call Wood made to the

Atlanta Police Department.  (Def. SOMF ¶ 3-4; See Trans. at p. 9).  This

underscores the importance of determining when the arrest occurred and thus

establishing the time at which a jury would be required to determine if arguable

probable cause to arrest was present.

        If the jury determines that Plaintiff was not arrested until after Defendant

spoke with Wood, other facts impact whether Defendant had arguable probable

cause for the arrest.  If the arrest occurred after Defendant spoke with Wood,

Defendant would have known Plaintiff was the individual that spoke with Wood and Daughter and would have known Plaintiff admitted he commented on Daughter's underwear.  Even if the arrest is determined to have occurred at this late time, Plaintiff's, Wood's, and Defendant's account of this later encounter between Plaintiff, Wood, and Daughter is significantly disputed and involves facts that a jury must sort out.[15]

The Court concludes there is a dispute over critical facts concerning when Plaintiff was arrested and what Defendant knew whenever the arrest occurred so to determine if there was arguable probable cause to arrest.  The Court thus finds that it is not appropriate to grant summary judgment in favor of the Plaintiff or Defendant.  Skop, 485 F.3d at 1144.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [17] and Plaintiff's Motion for Summary Judgment [19] are **DENIED**.

---

[15] Defendant's account of what happened is not supported by the Witness Statement, which does not state that Plaintiff followed Woods generally, or that he followed her to the swing set.  (Witness Statement at p. 1).  The Witness Statement, however, could be interpreted to establish that Plaintiff was already at the swing set when Wood arrived.  (Id.).  A trier of fact must consider what happened on February 22, 2011, and what impact these facts have in this case.

**SO ORDERED** this 21st day of August, 2014.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE