[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14571
_____

D. C. Docket No. 1:13-cv-00595-WSD

DAN J. BENSON,

                              Plaintiff-Appellee,
                              Cross-Appellant,

versus

OFFICER ANDRES FACEMYER,
in his individual capacity,

                              Defendant-Appellant,
                              Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(July 20, 2016)

Before ED CARNES, Chief Judge, DUBINA, Circuit Judge and HUCK,[*] District Judge.

---

[*] Paul Huck, United States District Judge for the Middle District of Florida, sitting by designation.

PER CURIAM:

Dan Benson filed a complaint in district court against police officer Andres Facemyer ("Officer Facemyer"), under 42 U.S.C. § 1983, alleging that Officer Facemyer violated Benson's Fourth Amendment rights by arresting him without probable cause. The district court conducted a jury trial, and the jury found in favor of Benson and awarded him $472,000 in damages. Thereafter, Officer Facemyer filed a motion for judgment as a matter of law, reasserting his right to qualified immunity, and he filed a motion for new trial. The district court denied Officer Facemyer's motion for judgment as a matter of law, but granted his motion for new trial solely on the issue of damages. Officer Facemyer now appeals the district court's order denying his post-trial motion for judgment as a matter of law and the district court's order granting a new trial solely on the issue of damages. Benson filed a cross-appeal challenging the district court's ruling that Officer Facemyer had arguable probable cause when he formally arrested Benson. Having the benefit of oral argument, reading the parties' briefs, and reviewing the record, we affirm in part and dismiss in part for lack of jurisdiction.

2

# I. BACKGROUND[1]

On February 22, 2011, Benson, who was then sixty-five years old, was walking in a park in Atlanta, Georgia. As he walked by a woman, later identified as Ms. Wood, and her two-year-old daughter, he waved. Benson noticed that the child was wearing a pink jumper. He said, "That's a beautiful pink dress you have on." The child then "grabbed her bodice, yanked it up about a half an inch and yell[ed], Panties." The child's attire reminded Benson of his daughter, who at a similar age wore matching bloomers under her dresses. Benson told the child that "[m]y daughter used to wear panties just like yours." He then continued walking in the opposite direction.

Shortly after this encounter, Ms. Wood borrowed a passerby's cell phone to call the Atlanta Police Department and report that a man matching Benson's description approached her and her daughter and asked her daughter about the color of her panties. Officer Facemyer responded to the call and identified Benson as the man Ms. Wood described. He yelled at Benson to "get over here" and asked Benson if he was armed. Benson held up his hands and stated that he had a firearm and a permit. Once Officer Facemyer was near Benson, he grabbed Benson's right

---

[1] Because this was a jury trial and Officer Facemyer did not request special interrogatories related to qualified immunity, "we must resolve all disputed factual issues for the question of qualified immunity by viewing the evidence in the light most favorable to [Benson]." *Priester v. City of Riviera Beach, Florida*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

arm, pulled it around his back and told him that if he ran, he would "chase [him] down . . . tackle [him], and . . . really hurt [him]." Next, Officer Facemyer handcuffed Benson, secured his firearm, and searched him. During this interaction, Officer Facemyer asked Benson what he said to the child. Benson described the exchange recited above. Officer Facemyer refused to believe Benson's recitation of what transpired between him and the child.

Soon, two other officers approached them, and Officer Facemyer left Benson in their custody. The officers peppered him with questions about his encounter with the child and when Benson told them that he merely spoke to the child and nothing more, the officers refused to believe him. They eventually placed Benson into a police wagon where he remained for approximately one hour.

While Benson remained in the police wagon, Officer Facemyer conducted an investigation. He briefly interviewed Ms. Wood and asked her to complete a written statement. In her statement, Ms. Wood reported that she and her daughter encountered Benson twice while they were in the park. At the first encounter, Benson said "hi" to them while they were walking. At a later encounter, Ms. Wood stated that Benson approached them and asked her daughter "if her panties were pretty and matched her dress." Benson's question prompted her daughter to "place both her hands on her panties and say 'panties pretty.'" In addition to obtaining Ms. Wood's statement, Officer Facemyer discussed the incident with

three other officers, all of whom agreed that probable cause existed to arrest Benson for violating Georgia's child molestation statute. One of these officers also spoke with an assistant district attorney about the case, and the attorney likewise agreed that probable cause existed to arrest Benson. Hence, about an hour after questioning, handcuffing, and searching Benson, and ordering that Benson be detained in the police wagon, Officer Facemyer "formally arrested" Benson. He informed Benson that he was facing charges for felony child molestation because "[a]ccording to the FBI's code on felony child molestation, any adult who uses the word 'panty' in a sentence with a minor under 17 years of age has committed felony child molestation."

Subsequently, Benson filed a § 1983 action against Officer Facemyer. Both parties moved for summary judgment, but the district court denied the motions. The district court found that there was a dispute over critical facts concerning when Benson was arrested and what Officer Facemyer knew when the arrest occurred to support a determination of arguable probable cause to arrest. Hence, the district court denied qualified immunity to Officer Facemyer, and the case proceeded to trial. The jury found in favor of Benson and awarded him $472,000 in compensatory damages. Office Facemyer filed a motion for judgment as a matter of law, reasserting his entitlement to qualified immunity, and a motion for new trial. In denying the motion for judgment as a matter of law, the district court

5

found that Officer Facemyer placed Benson under arrest shortly after arriving on the scene and acted without arguable probable cause when he made the arrest. Therefore, the district court determined that Officer Facemyer was not entitled to qualified immunity at that time. The district court concluded that "there [wa]s [a] legally sufficient evidentiary basis for a reasonable jury to have found for [Benson] based upon the arrest at the time [he] was detained and handcuffed."

However, the district court vacated the jury's verdict and ordered a new trial as to damages because it found that factual developments arose after Officer Facemyer's initial arrest of Benson that impacted Officer's Facemyer's liability for damages. Officer Facemyer timely appeals the district court's denial of his motion for judgment as a matter of law and its order granting a new trial on damages. Benson cross-appeals, challenging the district court's ruling that factual developments after Benson's initial arrest gave Officer Facemyer arguable probable cause to formally arrest Benson.

## II. ISSUES

1. Whether this court has jurisdiction over Benson's cross-appeal or Officer Facemyer's appeal of the district court's order granting a new trial.

2. Whether the district court properly denied Officer Facemyer's motion for judgment as a matter of law.

## III. DISCUSSION

A. *Jurisdiction*

"Because we are a court of limited jurisdiction . . . we first must examine our own jurisdiction in this case." *Hudson v. Hall*, 231 F.3d 1289, 1293 (11th Cir. 2000) (citations omitted) (considering an appeal of a qualified immunity ruling). We have jurisdiction over all final judgments of the district court and over "a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.'" *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42, 115 S. Ct. 1203, 1208 (1995) (citations omitted). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.* A police officer's appeal of a denial of qualified immunity falls within this small category "where the disputed issue is whether the [officer]'s conduct violated clearly established law." *See Hudson*, 231 F.3d at 1293 (internal quotation marks omitted). Hence, we have jurisdiction over Officer Facemyer's appeal of the district court's denial of his motion for judgment as a matter of law because that appeal is a challenge to the denial of qualified immunity that depends on whether Officer Facemyer violated clearly established law. *See id.*

On the contrary, we do not have jurisdiction to entertain Benson's cross-appeal or Officer Facemyer's appeal of the district court's grant of a new trial. The

jurisdictional exception for qualified immunity cases does not encompass an appeal like Benson's which challenges the district court's finding that Officer Facemyer developed arguable probable cause to arrest Benson during Officer Facemyer's investigation following Benson's initial arrest.  Thus, Benson contends that we have pendent appellate jurisdiction over his cross-appeal because it is "inextricably intertwined" with Officer Facemyer's challenge to the district court's denial of qualified immunity.  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir. 1999).

However, we conclude that the resolution of Benson's cross-appeal is "not necessary to resolve" Officer Facemyer's challenge to the district court's denial of qualified immunity at the time of Benson's initial arrest.  *See King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1380 (11th Cir. 2009) (stating that pendant appellate jurisdiction does not exist "when resolution of the nonappealable issue [i]s not necessary to resolve the appealable one").  Benson's cross-appeal would require this court to consider whether Officer Facemyer had arguable probable cause when he formally arrested Benson, while Office Facemyer's challenge implicates this question with respect to Benson's initial arrest.  The formal arrest occurred approximately one hour after the initial arrest and, during that time, a number of factual developments arose that are relevant to the arguable probable cause inquiry.  Consequently, the formal arrest involves different circumstances and requires a

separate arguable probable cause analysis than the initial arrest.[2]  Accordingly, Benson's cross-appeal is not "inextricably intertwined" with Officer Facemyer's appeal, and we decline to entertain it.

Likewise, we lack jurisdiction over Officer Facemyer's appeal of the district court's grant of a new trial on damages.  *See Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1503 (11th Cir. 1985) ("[T]he grant of a new trial is an interlocutory order, not subject to appellate review unless coupled with the grant of a [judgment notwithstanding the verdict] as provided in Fed. R. Civ. P. 50(c).").  Hence, the only appeal properly before us is Officer Facemyer's challenge to the district court's denial of his motion for judgment as a matter of law.

B.  *Motion for judgment as a matter of law*

Officer Facemyer's appeal of the district court's denial of his motion for judgment as a matter of law is a challenge to the denial of qualified immunity, which we review de novo.  *See Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000).  The district court concluded that Officer Facemyer is not entitled to qualified immunity for his initial arrest of Benson because Officer Facemyer did not have arguable probable cause for that initial arrest.  We agree.

---

[2]  We express no view as to whether arguable probable cause can develop after an unlawful arrest, or whether qualified immunity can arise based on the post-arrest development of arguable probable cause.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). We employ a two-part test to evaluate a qualified immunity defense. First, the police officer "must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Pickens v. Hollowell*, 59 F.3d 1203, 1205 (11th Cir. 1995) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)). Second, if the officer "meets this burden, the plaintiff must then demonstrate that the [officer] violated clearly established law based upon objective standards." *Id*. (quoting *Hartsfield*, 50 F.3d at 953). There is no question that Officer Facemyer was acting within the scope of his discretionary authority during his interactions with Benson. However, there is a question whether Officer Facemyer violated clearly established law when he initially arrested Benson.

"[A]n arrest without probable cause violates the Fourth Amendment." *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992). Probable cause exists if "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or

is about to commit an offense." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990) (citations and footnote omitted). The appropriate inquiry under the "violated clearly established law" prong of qualified immunity, however, "is not whether there was probable cause, but whether there was 'arguable' probable cause to arrest." *See Pickens*, 59 F.3d at 1206. Arguable probable cause is evaluated by determining whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (alteration in original) (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001)); s*ee also Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) ("[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later.").

A police officer "may seize a suspect for a brief, investigatory" stop if (1) the officer has "a reasonable suspicion that the suspect was involved in" a crime and (2) the stop is "reasonably related in scope to the circumstances" giving rise to the stop. *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (internal quotation marks omitted). "No brightline test separates an investigatory stop from an arrest." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995).

"Instead, whether a seizure has become too intrusive to be an investigatory stop and must be considered an arrest depends on the degree of intrusion, considering all the circumstances." *Id*. (citations omitted).  When examining the circumstances, we consider "the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (quoting *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988)).  Considering the totality of the circumstances presented, we conclude that Officer Facemyer's initial detainment of Benson was an arrest.

When we consider first the law enforcement purpose served by the detention of Benson, we closely examine "the most important factor . . . 'whether the police detained [the defendant] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference.'" *Id.* at 1351 (alteration in original) (quoting *Hardy*, 855 F.2d at 759).  Here, when he encountered Benson, Officer Facemyer knew that an anonymous caller had reported to authorities that while she and her daughter were in the park, a man asked the caller's daughter about the color of her panties.  Officer Facemyer also had a description of the man who spoke to the child.  When Officer Facemyer identified Benson as the man described by the caller, he questioned him, searched

12

him, and disarmed him. Within a short period of time, other officers arrived at the scene, and Officer Facemyer left Benson in their custody while he conducted an investigation. The officers placed Benson in the police van where he remained for approximately one hour. Therefore, the record evidence supports the finding that Officer Facemyer was diligent in his investigation and did not detain Benson for any amount of time longer than was necessary to conduct an investigation.

We next consider the "'actual scope and intensity of the intrusion.'" *Id.* (quoting *Hardy*, 855 F.2d at 760). We agree with the district court that Benson's detainment was a severe form of intrusion that was unnecessary under the circumstances. While disarming Benson, Officer Facemyer threatened him with violence should he attempt to run, and then placed Benson in handcuffs. This action was surely not the minimal amount of interference Officer Facemyer could have applied to complete his investigation of a non-exigent matter. *Cf. Gil*, 204 F.3d at 1351 (finding that the detention in the back of a police car was reasonable where the detainee could not be immediately searched and could have interfered with the search of a residence). Hence, we conclude that the scope of the intrusiveness of the detention supports the finding that Benson's arrest occurred when he was initially detained by Officer Facemyer. This was a severe form of intrusion that was unnecessary for either officer safety or the completion of the

Case 1:13-cv-00595-WSD Document 84 Filed 07/20/16 Page 14 of 17
Case: 15-14571 Date Filed: 07/20/2016 Page: 14 of 16

investigation. Accordingly, under the *Gil* factors, Benson's detention was more intrusive than necessary and constituted an arrest.

We next examine whether Officer Facemyer had arguable probable cause to arrest Benson for a child molestation violation. In our examination, we consider the elements of the crime charged and the operative fact pattern. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137–38 (11th Cir. 2007). Arguable probable cause does not exist if it is "clear that the conduct in question does not rise to the level of a crime, under the facts known at the time." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013). This is an objective standard, and the officer's subjective intent, beliefs, or inferences are not part of the inquiry. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

Under Georgia law, a person commits child molestation when such person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." O.C.G.A. § 16-6-4(a)(1) (2009). "[T]he law against child molestation . . . proscribe[s] acts which offend against the public's sense of propriety as well as to afford protection to a child's body in those cases where the act or acts are more suggestive of sexually oriented misconduct than simply assaultive in nature." *Chapman v. State*, 318 S.E.2d 213, 214 (Ga. App. Ct. 1984). "The focus is on the adult's action toward the child in relation to the motive

for the action." *Stroening v. State*, 486 S.E.2d 670, 671 (Ga. App. Ct. 1997). An act "generally viewed as morally indelicate or improper or offensive" can constitute child molestation. *See Chapman*, 318 S.E.2d at 214. There is no requirement that the act must involve physical contact with the child. "A child's mind may be victimized by molestation as well." *Smith v. State*, 342 S.E.2d 769, 771 (Ga. App. Ct. 1986).

As an initial matter, the district court's qualified immunity analysis erroneously relied on only what Benson told Office Facemyer at the time of the arrest. Instead, it should have relied on what Officer Facemyer knew. *See Lee v. Ferraro*, 284 F.3d at 1195. Officer Facemyer knew that an unidentified woman called the authorities to report that a man fitting Benson's description asked her two-year-old daughter the color of her panties; that the passerby who loaned Ms. Wood her phone stated that Benson was the subject of the call; that Benson admitted that he mentioned the word "panties" in a brief conversation with the child that centered on the color of the child's dress and bloomers; and that Benson was carrying a firearm with a valid concealed carry permit. The question the district court should have asked is whether a reasonable officer with that information could have believed that arguable probable cause existed to arrest Benson for the crime of child molestation. The answer to that question is no. No reasonable officer could have believed that Benson's passing comment to the child

15

"offend[ed] against the public's sense of propriety," *Chapman*, 318 S.E.2d at 214, or was "morally and sexually indelicate, improper and offensive," *id*. at 215. Moreover, Benson's legal possession of a firearm could not give a reasonable officer reason to believe that Benson had committed the offense of child molestation.

Accordingly, we conclude from the record that the district court did not err in denying Officer Facemyer's motion for judgment as a matter of law because his initial detainment of Benson was an arrest, and Officer Facemyer violated clearly established law in making that arrest. Thus, Officer Facemyer was not entitled to qualified immunity at the time of the initial arrest.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the district court's order denying Officer Facemyer's motion for judgment as a matter of law, and we dismiss the parties' remaining appeals for lack of jurisdiction.

**AFFIRMED IN PART AND DISMISSED IN PART FOR LACK OF JURISDICTION**.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 20, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-14571-CC
Case Style: Dan Benson v. Andres Facemyer
District Court Docket No: 1:13-cv-00595-WSD

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, CC at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs