**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DAN J. BENSON,**

                    **Plaintiff,**

       **v.**                                                    **1:13-cv-595-WSD**

**OFFICER ANDRES FACEMYER,
in his individual capacity,**

                    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Dan J. Benson's ("Plaintiff") and

Defendant Officer Andres Facemyer's ("Defendant") memoranda [97], [98] filed

pursuant to the Court's September 23, 2016, Order [96].

**I.    BACKGROUND**

       A.    <u>Facts</u>[1]

       On February 22, 2011, Plaintiff, who was then sixty-five years old, was

walking in Chastain Park in Atlanta, Georgia (the "Park").  As he walked by a

woman, later identified as Ms. Wood, and her two-year-old daughter, he waved.

---

[1]      The Court here briefly describes the background of this case based on the
Eleventh Circuit's July 20, 2016, Order.  A more detailed explanation of the facts
is contained in the Court's September 30, 2015, Order [72].

Plaintiff noticed that the child was wearing a pink jumper.  He said, "That's a beautiful pink dress you have on."  The child then "grabbed her bodice, yanked it up about a half an inch and yell[ed], Panties."  The child's attire reminded Plaintiff of his daughter, who at a similar age wore matching bloomers under her dresses. Plaintiff told the child that "[m]y daughter used to wear panties just like yours." He then continued walking in the opposite direction.

Shortly after this encounter, Ms. Wood borrowed a passerby's cell phone to call the Atlanta Police Department ("APD") and report that a man matching Plaintiff's description approached her and her daughter at the Park and asked her daughter about the color of her panties.  Defendant responded to the call and identified Plaintiff as the man Ms. Wood described.  He yelled at Plaintiff to "get over here" and asked Plaintiff if he was armed.  Plaintiff held up his hands and stated that he had a firearm and a permit.  Once Defendant was near Plaintiff, he grabbed Plaintiff's right arm, pulled it around his back and told him that if he ran, he would "chase [him] down . . . tackle [him], and . . . really hurt [him]."  Next, Defendant handcuffed Plaintiff, secured his firearm, and searched him.  During this interaction, Defendant asked Plaintiff what he said to the child.  Plaintiff described the exchange recited above.  Defendant did not believe Plaintiff's description of the interaction between him and the child.

2

A short time later, two other APD officers arrived at the Park and, when they did, Defendant left Plaintiff in their custody.  The officers asked Plaintiff questions about his encounter with the child and, when Plaintiff told them that he merely spoke to the child and nothing more, the officers refused to believe him.  They placed Plaintiff in a police wagon where he remained for approximately one hour.

While Plaintiff was in the police wagon, Defendant conducted an investigation.  He briefly interviewed Ms. Wood and asked her to complete a written statement.  In it, Ms. Wood reported that she and her daughter encountered Plaintiff twice while they were in the Park.  At the first encounter, Plaintiff said "hi" to them while they were walking.  At a later encounter, Ms. Wood stated that Plaintiff approached them and asked her daughter "if her panties were pretty and matched her dress."  Plaintiff's question prompted her daughter to "place both her hands on her panties and say 'panties pretty.'"  Defendant also discussed the incident with three other APD officers, who agreed that probable cause existed to arrest Plaintiff for violating Georgia's child molestation statute.  One of these officers also spoke with an assistant district attorney about the case, who agreed that probable cause existed to arrest Plaintiff.  When Defendant's investigation was completed, about an hour after Plaintiff was placed in the police wagon, Defendant "formally arrested" Plaintiff.  He told Plaintiff he was facing charges for felony

child molestation because "[a]ccording to the FBI's code on felony child molestation, any adult who uses the word 'panty' in a sentence with a minor under 17 years of age has committed felony child molestation."

B.    Procedural History[2]

On April 22, 2013, Plaintiff filed his Amended Complaint, asserting a Fourth Amendment claim under 42 U.S.C. § 1983. A trial was held from February 2, 2015, through February 5, 2015. The jury found in favor of Plaintiff, deciding that Plaintiff was arrested when Defendant handcuffed and searched Plaintiff and he was placed in the police wagon (the "Initial Encounter"). The jury awarded him $472,000 in compensatory damages for the damages suffered between the arrest and when Plaintiff, two weeks later, was indicted on child molestation charges.

Defendant filed his Motion for Judgment as a Matter of Law, arguing again that he is entitled to qualified immunity for Plaintiff's arrest. He also filed a Motion to Alter or Amend the Judgment or, in the Alternative, for a New Trial.

On September 30, 2015, the Court entered its Order [72] denying Defendant's Motion for Judgment as a Matter of Law, and granting, in part,

---

[2]    A more detailed procedural history of this action is recited in the Court's September 30, 2015, Order [72].

Defendant's Motion to Alter or Amend the Judgment or, in the Alternative, for a New Trial.  The Court stated that a new trial on the issue of damages would be conducted after the Court's considered whether Defendant is entitled to qualified immunity for events occurring after the Initial Encounter, specifically whether Defendant's further investigation developed arguable probable cause for Plaintiff's arrest and, if so, whether he then had qualified immunity.  Both parties appealed the September 30, 2015, Order.

On July 20, 2016, the Eleventh Circuit issued its Order [84] affirming the Court's denial of Defendant's Motion for Judgment as a Matter of Law and dismissing the parties' remaining issues for lack of jurisdiction.  In affirming the Court's denial of Defendant's Motion for Judgment, the Eleventh Circuit held that Defendant's detention of Plaintiff during the Initial Encounter, especially the scope of the detention, caused the detention to constitute an arrest.  The Eleventh Circuit found further that no reasonable officer could have found that Plaintiff's comment to the child in the Park constituted child molestation under Georgia law.  Benson v. Facemyer, —— F. App'x ——, 2016 WL 3916000, at *6 (11th Cir. Jul. 20, 2016). The Eleventh Circuit noted, in a footnote, that the Court intended to address, before the damages re-trial, whether arguable probable cause arose during Defendant's investigation after the Initial Encounter and, if so, whether it extended

5

qualified immunity to Defendant.  The Eleventh Circuit "express[ed] no view as to whether arguable probable cause can develop after an unlawful arrest, or whether qualified immunity can arise based on the post-arrest development of arguable probable cause."  <u>Id.</u> at *3 n.2.

On September 9, 2016, the Eleventh Circuit issued its mandate [93].  On September 23, 2016, the mandate was made the judgment of the Court [94].

To further process this case for trial, on September 23, 2016, the Court issued an order stating:

> Before the Court conducts a new trial on damages, the Court will consider whether arguable probable cause can develop after an unlawful arrest, whether qualified immunity can arise based on the post-arrest development of arguable probable cause, and the impact, if any, developed probable cause and post-arrest qualified immunity would have on Plaintiff's claim for damages.

(September 23, 2016, Order at 2).  The Court required the parties to file memoranda discussing the following issues:  (i) whether arguable probable cause developed after Plaintiff's arrest but before Defendant advised Plaintiff of the charges for which he was arrested and was ordered to be transported to the police station jail, (ii) whether qualified immunity arose based on such post-arrest arguable probable cause, and (iii) the impact of development of post-arrest probable cause and qualified immunity on Plaintiff's claim for damages.

6

On October 17, 2016, Defendant filed his Memorandum [97] ("Defendant's Memorandum").  Defendant summarily argues, based on the facts known to Defendant and the testimony of the officers on the scene at the Park, that arguable probable cause developed after Plaintiff's arrest but before Defendant advised Plaintiff of the charges against him, and thus he is entitled to qualified immunity.

On November 4, 2016, Plaintiff filed his Memorandum [98] ("Plaintiff's Memorandum").  Plaintiff argues that the information Defendant obtained after the initial arrest did not give rise to arguable probable cause, and that the other officers' and the assistant district attorney's views are not relevant to establish what a reasonable officer could have believed based on the evidence Defendant gathered.  Plaintiff argues that, even if the information Defendant obtained after he initially detained Defendant gives rise to arguable probable cause, it is well-settled that qualified immunity is established based on the information known to the officer at the time of arrest, not facts discovered after the arrest.  Plaintiff contends that, if the Court finds Defendant developed arguable probable cause and that this development is relevant to Plaintiff's claim for damages, the Court must determine whether Defendant's formal arrest was the natural and foreseeable consequence of Defendant's actions when he arrived on the scene.  That is, if the evidence at re-trial could allow a jury to find that Defendant Defendant's actions in detaining

Plaintiff colored Ms. Wood's, the other officers', and the prosecutor's view of the events, then a jury could find that Defendant's decision to formally arrest Plaintiff was caused by Defendant's initial illegal conduct during the Initial Encounter.

## II.    DISCUSSION

    A.    <u>Whether Arguable Probable Cause Developed After Plaintiff's Arrest During the Initial Encounter</u>

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Wood v. Kesler</u>, 323 F.3d 872, 877 (11th Cir. 2003) (quoting <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002)).  The Eleventh Circuit uses a two-part test to evaluate a qualified immunity defense.  First, the police officer "must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Pickens v. Hollowell</u>, 59 F.3d 1203, 1205 (11th Cir. 1995) (quoting <u>Hartsfield v. Lemacks</u>, 50 F.3d 950, 953 (11th Cir. 1995)).  Second, if the officer "meets this burden, the plaintiff must then demonstrate that the [officer] violated clearly established law based upon objective standards." <u>Id.</u> (quoting <u>Hartsfield</u>, 50 F.3d at 953).

"[A]n arrest without probable cause violates the Fourth Amendment." <u>Lowe v. Aldridge</u>, 958 F.2d 1565, 1570 (11th Cir. 1992).  Probable cause exists if "the

facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990) (citations and footnote omitted). The appropriate inquiry under the "violated clearly established law" prong of qualified immunity, however, "is not whether there was probable cause, but whether there was 'arguable' probable cause to arrest." See Pickens, 59 F.3d at 1206. Arguable probable cause is evaluated by determining whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (alteration in original) (quoting Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001)); see also Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) ("[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later.").

In examining arguable probable cause, a court considers the elements of the crime charged and the operative fact pattern. See Skop v. City of Atlanta, 485 F.3d

9

1130, 1137-38 (11th Cir. 2007).  Arguable probable cause does not exist if it is "clear that the conduct in question does not rise to the level of a crime, under the facts known at the time."  Wilkerson v. Seymour, 736 F.3d 974, 978 (11th Cir. 2013).  This is an objective standard, and the officer's subjective intent, beliefs, or inferences are not part of the inquiry.  Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010).

Under Georgia law, a person commits child molestation when such person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."  O.C.G.A. § 16-6-4(a)(1) (2009).  "[T]he law against child molestation . . . proscribe[s] acts which offend against the public's sense of propriety as well as to afford protection to a child's body in those cases where the act or acts are more suggestive of sexually oriented misconduct than simply assaultive in nature."  Chapman v. State, 318 S.E.2d 213, 214 (Ga. Ct. App. 1984).  "The focus is on the adult's action toward the child in relation to the motive for the action."  Stroeining v. State, 486 S.E.2d 670, 671 (Ga. Ct. App. 1997).  An act "generally viewed as morally indelicate or improper or offensive" can constitute child molestation.  See Chapman, 318 S.E.2d at 214.  There is no requirement that the act must involve physical contact with the child.  "A child's

mind may be victimized by molestation as well." <u>Smith v. State</u>, 342 S.E.2d 769, 771 (Ga. Ct. App. 1986).

The Eleventh Circuit affirmed the Court's determination that Defendant is not entitled to qualified immunity for his arrest during the Initial Encounter. The Eleventh Circuit noted that Defendant was aware of the following facts at the time of Plaintiff's arrest:

1. An unidentified woman called the authorities to report that a man fitting Plaintiff's description asked her two-year-old daughter the color of her panties;

2. The passerby who loaned Ms. Wood her phone stated that Plaintiff was the subject of the call;

3. Plaintiff admitted that he mentioned the word "panties" in a brief conversation with the child that centered on the color of the child's dress and bloomers; and

4. Plaintiff was carrying a firearm with a valid concealed carry permit.

<u>Benson</u>, 2016 WL 3916000, at *6. In finding Defendant is not entitled to qualified immunity for the initial arrest, the Circuit Court stated that "no reasonable police officer" could have found that Plaintiff's comment to the child constituted child molestation under Georgia law. <u>Id.</u> The Court stated further that no reasonable officer could have believed that Plaintiff's passing comment to the child "offend[ed] against the public's sense of propriety," <u>Chapman</u>, 318 S.E.2d at 214,

or was "morally and sexually indelicate, improper and offensive," id. at 215.

Benson, 2016 WL 3916000, at *6.[3]

The question before the Court now is whether a reasonable officer, with the additional information Defendant developed after the arrest, could have believed that arguable probable cause existed sufficient to arrest Plaintiff for the crime of child molestation.  The additional information Defendant learned after the arrest is the following:

1.  Ms. Wood reported seeing Plaintiff twice in the Park.  At the first encounter, Plaintiff engaged Ms. Wood and her daughter by saying "hi," but then walked on.

2.  At a second encounter a short time later, Ms. Wood stated that Plaintiff approached them and, unprompted, asked her daughter "if her panties were pretty and matched her dress."  Benson's question caused her daughter to "place both her hands on her panties and say 'panties pretty.'"

3.  After the initial arrest, Defendant conferred with three other officers who responded to the report of the encounter.  After hearing the facts that Defendant told them, the officers agreed that Plaintiff should be arrested for child molestation.  One of those officers called an

---

[3]     The Eleventh Circuit noted that Plaintiff's legal possession of a firearm could not give a reasonable officer reason to believe that Plaintiff had committed the offense of child molestation.  Id.

assistant district attorney who stated the opinion that probable cause existed.[4]

4.      Plaintiff had traveled to the Park from his home in Stone Mountain, Georgia.

5.      Plaintiff drove to the Park in a borrowed van.[5]

The Court now considers if Defendant had arguable probable cause when, after his further investigation, he seized Plaintiff and transported him to the police station.  The Court concludes he did not.  The test is whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest."  Lee, 284 F.3d at 1195. The question centers on the additional information Defendant learned during his further investigation and whether it could have led a reasonable officer to believe there was probable cause to arrest.  See id.  The lynchpin to this evaluation is (i) what was said by plaintiff and (ii) is what was said an "immoral or indecent act

---

[4]      The record does not show what these fellow officers and assistant district attorney were told or what information they used to express their arguable probable cause opinions.

[5]      Defendant asserts that he also learned during his investigation that "Plaintiff followed [Ms. Wood] around the park and made a concerted effort to interact with her daughter."  ([99] at 2).  The evidence does not support this assertion. Defendant also asserts that he learned that Plaintiff possessed "a borrowed white panel van that could not be traced to him."  ([99] at 2).  The evidence does not support that Defendant knew of this fact when he formally arrested Plaintiff, but it was discovered later.

to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."  O.C.G.A. § 16-6-4(a)(1).  In this case, where the conduct in which Plaintiff engaged is not "assaultive," the "focus is on the adult's action toward the child in relation to the motive for the action."  Stroeing, 486 S.E.2d at 671.[6]

What Defendant knew as a result of his further investigation was that there was, according to Ms. Wood, a short first encounter when Plaintiff said "hi," and that at the second encounter Ms. Wood said Plaintiff asked the child if her panties were pretty and matched her dress.  The encounter where Plaintiff said "hi" was not sexually suggestive and the comments he apparently made during the second encounter were not materially different than what Defendant understood was said at the time of the Initial Encounter and arrest.  That he consulted with other officers, one of whom contacted an assistant district attorney who, the officer stated, believed there were grounds to arrest for child molestation, does not alter the arguable probable cause analysis.  It is unknown what Defendant communicated to the officers or what was communicated to the assistant district

---

[6]     As noted before, an act generally viewed as morally indelicate or improper or offensive" can constitute child molestation.  See Chapman, 318 S.E.2d at 214.  Physical contact is not required because a "child's mind may be victimized by molestation as well."  Smith, 342 S.E.2d at 771.

attorney.  Thus the opinions they reached are not relevant.  The Court thus must rely on what Defendant knew.[7]  That Plaintiff was far from home and driving a borrowed van, while suspicious, does not provide arguable probable cause or a sufficient factual basis to find that Defendant committed child molestation when he made his comments.

B.  Damages

There remains the question of damages.  "Section 1983 'creates a species of torts liability,' and damages are determined by compensation principles of common-law tort."  Smith v. City of Oak Hill, Fla., 587 F. App'x 524, 527 (11th Cir. 2014) (quoting Heck v. Humphrey, 512 U.S. 477, 483 (1994)).  "While defendants in § 1983 cases 'are, as in common law tort disputes, responsible for the natural and foreseeable consequences of their actions,' the § 1983 plaintiff must show causation."  Id. (quoting Jackson v. Sauls, 206 F.3d 1156, 1168 (11th Cir.2000)).  "Causation has two required elements:  cause-in-fact and legal or

---

[7]     That other officers or an assistant district attorney believed there was probable cause to arrest is not relevant to the "reasonable police officer" analysis. See Poulakis v. Rogers, 341 F. App'x 523, 540 (11th Cir. 2009).  Even if Defendant misinterpreted, in good faith, the child molestation statute, mistakes of law, "no matter how reasonable or understandable," cannot provide reasonable suspicion or probable cause.  United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir. 2003).

proximate cause." Id. (citing Jackson, 206 F.3d at 1168 n.16). "To show that the constitutional tort was a cause-in-fact of the injuries and damages claimed, the plaintiff must show that 'except for the constitutional tort, such injuries and damages would not have occurred.'" Id. (quoting Jackson, 206 F.3d at 1168 n.16). "To show that the constitutional tort was the legal or proximate cause of the injuries and damages claimed, a plaintiff must show that 'the injury or damage was a reasonably foreseeable consequence of the [officer's] act or omission.'" Id. (quoting Jackson, 206 F.3d at 1168 n.16).

This will be the issue at trial. To best develop the record for any possible appeal, at trial the Court will ask the jury to determine whether and in what amount to award damages for the following time periods: (1) from the time of Plaintiff's initial arrest through his formal arrest; and (2) from the time of Plaintiff's formal arrest through his indictment.

The Court, in conclusion, notes that this is not a case where Defendant's arrest of Plaintiff was motivated by an evil motive or intent, or where the arrest was reckless or callously indifferent to Plaintiff's federally-protected rights.[8] In

---

[8]      On February 4, 2016, the Court granted Defendant's motion for a directed verdict as to punitive damages. The Court noted that, to receive punitive damages in a Section 1983 action, the plaintiff must show that the defendant's conduct was motivated by an evil motive or intent, or involved reckless or callous indifference

such cases, an officer with an evil motive or intent could knowingly arrest a suspect without arguable probable cause, and then conduct an investigation with the goal of justifying the initial illegal arrest.  That is not the case here, where Defendant, in apparent good faith, detained Plaintiff while he conducted an investigation to determine the proper course of action to take with regard to a statute difficult to understand.  Defendant consulted with multiple other officers, one of whom consulted with an assistant district attorney.  Defendant's investigation is precisely the type of conduct the law should encourage, even if it does not support there was arguable probable cause to arrest.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that, pursuant to the Court's legal findings detailed in this Opinion and Order, at trial the Court will ask the jury to determine whether to award damages and, if so, in what amount, for the following time

---

to the federally-protected rights of others.  (Tr. [57] at 329).  The Court found that there was no argument or evidence at trial to support a jury finding that Defendant's arrest of Plaintiff was motivated by an evil motive or intent, or that it was done recklessly or callously indifferent to his federally-protected rights.  (Tr. at 330).

periods:  (1) from the time of Plaintiff's initial arrest through his formal arrest; and

(2) from the time of Plaintiff's formal arrest through his indictment.

**SO ORDERED** this 14th day of December, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE